The next case is Enoksen v. Superintendent Squires. Good morning, your honors. May it please the court. My name is Richard E. Michelle. I represent the petitioner in this case, Nancy Enoksen, who as a lawyer was prosecuted by the state of New York for stealing escrowed funds from a client and falsifying business records to conceal that fraud. At the time when this case was prosecuted, Ms. Enoksen, of course, did not testify. We know that. And considerable testimony was presented concerning the theft of the money and the falsification of the business records. At the charge conference, the court announced that it was going to charge strictly according to what is commonly referred to in the state system as the CJI instructions. And it is those instructions, your honors, particularly one that brings us here today at page 704 of the record, because notwithstanding the judge's promise to both sides that he was going to adhere to the CJI, and apparently in conflict or disregarding the state court of appeals admonition or warning in people against Owens that jury instructions do not provide fertile ground for innovation, the court for some reason deviated from the CJI charge and added the following language. Although the defendant had a right to testify, she chose not to do so, and then added the what was the standard CJI charge that the fact that the defendant did not testify is not a factor from which any inference against the defendant may be drawn. So the standard charge would have been just that single sentence. That is correct. Just the one sentence. Just the one sentence. And that's what's recommended throughout the state, and if you look at the statute, CPL 300.10, what the legislature and what the courts are suggesting is that that is the charge and that should not be deviated from. But it was in this case. And the question is presented. I'm just making sure I understand your argument. So the problem is the addition of the first sentence, which is all alone. It's factually accurate that she didn't testify and legally accurate that she had a right to testify. So the argument is that by putting those two sentences together, it drew attention. It drew unwarranted attention to the exercise of the right not to testify and obviated the effect of the second sentence. Is that how it? Your Honor, most respectfully, we're not talking about the right to testify. We're talking about the Fifth Amendment privilege. The right not to testify. Not to testify. And what the consequence of not testifying. And again, what we have to look at is the context of this entire case and how this case was prosecuted and how this case developed in the court. Because we're not just looking at the charge itself. And what's interesting here is that Judge Brown, who had the habeas petition, compared this charge to one that this court endorsed in Imran in 964 F. Second, where the court criticized Judge Glass's charge as being not, I guess, not mellifluous or non-mellifluous. And Judge Brown said if that was not mellifluous, this charge was cacophonous. So the real issue in this case, the real issue in this case, because I think everybody would agree that putting that language in where a defendant didn't testify, and it's obvious that the defendant didn't testify, puts a price on the defendant's not testifying by bringing it to the jury's attention, but saying it in the manner in which it was said. So the real issue here is whether the second sentence, and the prosecutor's going to argue this, that the jury is presumed to follow the court's instructions. And we all recognize that there's a presumption of regularity that attaches to criminal proceedings in the state system. And part of this is the presumption that the jury follows the court's instructions. But most respectfully to the court, that presumption is not sacrosanct. It may be rebutted. And what I'd like to do is perhaps call attention, this court's attention, to what Judge Jackson said in an old case in Krulowitz v. United States, where he says in his concurring opinion at page 453, the naive assumption that prejudicial effects can be overcome by instructions to the jury, all practicing lawyers know to be an unmitigated fiction. And his citation in that observation is to a Second Circuit case, a civil case. So what I'm suggesting, Your Honors, is that, yeah, we have to start off with the presumption that the jury followed the court's instructions. But look at this record. These instructions at page 704 followed moments after the prosecutor, in a moment of heightened oratory, said to the jury at 687, 686, was asking, what was the defendant's intent? What were her intentions? And as the Court of Appeals in New York has said, intention involves the invisible operation of the mind, so you have to look at the conduct. And the prosecutor argues, and don't believe me, it's right there, the prosecutor says, her actions speak volumes. Well, her actions may have spoken volumes, but she said nothing. So the jury charge that the judge gave from our perspective, putting aside that second sentence, putting aside that second sentence, the judge was really saying, although she had the right to testify and could have explained all of the questions or given answers to all of the things that we've suggested at pages 64 to 67 of our brief, she chose not to. But don't hold that against her. We're suggesting, Your Honor, that under the facts and circumstances of this case, that you can come up with, and the appellate division did this when they affirmed the conviction, when they said that we're not going to reverse this conviction because the charge essentially stated the correct law. And Your Honor recognizes that. But what they didn't do was they didn't talk about the entire record, which we are required to do here, and what went on at the trial. If the prosecutor in one case can clarify an ambiguous charge so as to save the case, well, the prosecutor can here clarify a charge to render it ineffective or it should be reversed or improper. And that's what happened in the United States against Park at footnote 16 where the prosecutor's submission was cited for clarifying the court's instructions. And the prosecutor certainly clarified the instructions here by saying that her conduct speaks volumes. Now, the prosecutor is going to... Can I just ask, I mean, the reason that we say on request or the reason the law says on request you're entitled to an instruction to say you can't use adverse inferences is the supposition that courts have made that otherwise, that the jury already has it in its mind that when a defendant elects not to testify, when they exercise the privilege, the jury has it in its mind. So we have to protect against that, and that's why we have this line of cases. So I guess I'm asking why that first sentence, if we assume it was already in the minds of the jurors, the defendant didn't testify, how it's so added to the prejudice of this trial. When you say look at the record as a whole, it obviously did. Because the court is emphasizing to the jury that while the defendant had the right to do something and could have addressed the issues that were raised at trial, legitimately raised at trial, I'm not faulting the prosecutor for the summation. It has nothing to do with that. But again, this is how the case played out. If the defendant had testified, would the jury be instructed the defendant has a right to testify? Absolutely not, because the jury knows that the defendant has testified. But here the defendant has not testified. The jury doesn't have to be reminded that the defendant didn't testify and could have done so, and parenthesis, clarified these issues which, according to the prosecutor, speak volumes about her guilt. Were you counsel at trial? No, I was not. Your Honor, I came into this movie as all the credits are rolling up on the screen. So I'm dealing with the record as it was presented to me. And Ms. Enickson, to her credit, did this habeas petition pro se. No, that's fine. At trial, did the counsel for this defendant object or comment on this instruction? What had happened was, if I may, Your Honor, to put it in proper context, at the charge conference, the judge said, I'm giving CJI. And specific things weren't asked for. So there was no objection at that point. So we can't raise that, obviously. But what happened was after the instruction. You can raise it. Hold it. You can raise it afterwards. Oh, he raised it afterwards. And the judge denied the application. And what's important here is that in reviewing the charge, in reviewing the charge, the appellate division, the first issue that was raised was the legal and factual sufficiency. That the evidence was not legally sufficient. And Your Honor knows what the standard, the appellate standard for legal sufficiency is. And they also raised verdict against the weight of the evidence, which is a different standard. But saying that the evidence met the appellate standard of sufficiency is not the same thing as saying that, yeah, the charge was in error, but it would have been harmless in any event because the jury got from the court's instructions, the proper instructions, and look at the evidence, look at the facts of the case. They didn't say it was harmless error. So I'm suggesting, contrary to what the prosecutor may very well argue and has argued in the brief, that the court reviewed the evidence and found that with that charge there wasn't a problem. That's not so. They were distinct issues and distinct concepts that were being reviewed. So, again, what we come down to is that looking at this record as a whole, whether that one line, which Judge Brown found to be cacophonous, whether that one line- Not for Cocteau. What? Not for Cocteau. Well, maybe that, too. Cacophonous, not for Cocteau. Maybe that, too. I don't want to make myself a witness to this case. But in any event, what I'm saying is that this one line, based on the totality of this record, so infected the proceedings of the due process rights not to incriminate oneself under the Fifth Amendment was violated. Thank you very much. May I proceed? May it please the Court, my name is Hilda Mortensen, and I represent the appellee in this matter. Your Honors, I think the District Court summed the issue up succinctly and appropriately, that the issue before this Court, though nuanced and interesting, the challenged instruction does not provide grounds for relief. Applying the deference that's required under Aetba, habeas relief is not warranted because the State Court decision was neither contrary to, nor an unreasonable application of relevant Supreme Court precedent. The State Court appropriately viewed the challenged remark in the context of the entire charge, and the Court's entire charge repeatedly reminded the jurors that the burden remains unalterably with the people, that the Defendant bore no burden of proving anything in this case, and pointed out that the Defendant, there is no adverse inference that can be drawn against the Defendant for her decision not to testify. Now, given the many claims that were raised in the State Court, the State Court also necessarily considered the language in the context of the entire trial. It's not simply that the Court ruled the evidence sufficient that shows that there was an analysis of the record. There was about eight claims raised in this appeal, so it scrutinized all of the evidence in this case, and it didn't need a lot of verbiage in the decision because it's evident on its face that it did not negatively impact the Defendant since she was acquitted of two of the three charges. And the charge of no adverse inference is designed to undo the natural inclination to draw a negative inference. Clearly, it worked in this case. One of the pieces of evidence that Appellant points out as demanding an explanation was how could she say she met with the victim for four and a half hours in an invoice? Well, if that is indeed a question crying out for an explanation by the jurors, they were very comfortable in deciding in Appellant's favor on that charge, notwithstanding the lack of evidence in the case. On its face, the sentence points out two facts, the challenge sentence, that the Petitioner had a right to testify and that she did not do so. Neither of those facts was lost on the jury. Is that a remark better left unsaid? Probably. If a court were to, after the Defendant testifies, say the Defendant had a right not to testify but he chose to do so, that would be pretty subject to misinterpretation by the jury. And the argument here is this is essentially the flip of that, so that the first sentence obviated the effect of the second entirely. Well, again, I think that this first sentence standing alone, as the district court found, might be viewed as interfering with the Defendant's constitutional rights. But you can't view it in isolation, right, as the Supreme Court precedence teaches us. It has to be in connection with the sentence that followed, which was designed to neutralize exactly that, the inference that, well, why didn't she? The inference that the appellant is arguing is implied by that first line. And then, I'm sorry, Your Honor. Where did that first sentence come from? I don't have an answer for that, Your Honor. I apologize. I can only imagine that the court may be lost in place in this charge. I'm not sure. It was not something that was discussed among the parties beforehand, and I have not previously seen it. And there's nothing in the record indicating its origin? No. And just to point out, while there was an objection to the charge after the court gave its whole charge, it wasn't to the fact that a no adverse inference charge was given at all, which was one of the claims raised in state court. It was specifically to that first sentence, that preparatory remark, as I call it. And, again, it's not just the second sentence that neutralizes the harm, but it's the entirety of the charge that neutralizes the harm, with the repeated reminders of the burden being upon the people. And we're reading into this to suggest that the court had a negative inference of the defendant's decision not to testify, but I don't think the record gives rise to that. There's nothing in this record to support the idea that the court held the view that the defendant should have testified. In fact, when they were quarreling over the claim of right defense, the court said, you're entitled to it. On this record, you're entitled to the claim of right, and I'll give it if you want it. And the defendant herself explicitly declined the court's request. So there's nothing to suggest that the court had a negative view of the defendant or that it was telegraphing a negative view to the jurors. What was it that the court was offering her? A charge on the claim of right defense. So a lot of the testimony or a lot of the cross-examination and trial was geared toward raising an argument that this money was taken pursuant to this retainer agreement and that the defendant had done work for the complainant in this case. So the court offered to give that charge, which would have required the people to disprove that claim beyond a reasonable doubt, and the defendant chose not to avail herself of that. Obviously, if the court had a view that she should have testified to me, he would not have been so readily agreeable to providing the charge as he did. Excuse me. So it would be unreasonable to conclude here that the jury ignored the court's admonition. You know, I know you can't unring a bell, right, but jurors are presumed to follow the court's instructions. And it would be unreasonable to conclude that they did not follow the instructions as to the larceny charge, but were nonetheless able to follow the instructions perfectly well with regard to the falsifying business records charges. That juxtaposition, I think, speaks volumes about why that first sentence, though maybe better left unsaid, didn't so undermine the fairness of this trial as to deny this defendant due process. And I'm not arguing that this is harmless error, right? I think in this context with this charge, it's all bundled into one, that if this so infected the trial as to be a violation of due process, you have to look at every component of the trial, yes. But I'm not saying, well, don't worry about it. If it did violate her due process rights, it's harmless. I'm saying that when you look at it in its totality, there was no violation of the due process rights here. If the court has no other questions, I'll rely upon my brief, and I thank you very much for the time. With the court's permission. Okay.  The district attorney argues that the appellate division's order or decision did encompass a review of the entire record when reviewed at the charge. The appellate division, you can read the opinion as well as I can, says nothing in there about reviewing the record as a whole and the charge did not infect the proceedings. The position of the appellate division was that this was essentially a correct charge based on everything. We're saying it was not. We are bound by what the appellate division wrote, not what the prosecutor would like for them to have written. The prosecutor makes a big deal about the acquittal on two of the counts and the fact that she was convicted on one but acquitted on two. I would respectfully submit to the court that had a proper charge been given, she wouldn't have been convicted on the two counts she was acquitted on. She still would have been acquitted. And the reason for the acquittal is very simple. Look at page 463 of the record. At 463 of the record, the last thing she says in response to cross-examination when she's being questioned about all of these events that established that there was a falsifying of business records, she repeatedly is saying, I don't know, I don't know, I can't say, I'm not sure. But in 463, what does she say? I don't know anything. Now, how is that going to resonate with a jury when they're evaluating the sufficiency of the evidence? Forget about witness credibility. When a witness, the complaining witness, who's saying that money has been, I can establish that money is stolen, I just can't say when and how. How is that going to resonate with a jury when the complaining witness says, I don't know anything? Claim of right. Under the law of New York, I don't know how it is anywhere else, but even without a defendant's request for a charge on a defense, if the judge comes to the conclusion that viewing the evidence in the light most favorable to the defendant, the judge, even without request by the defendant, must give the charge. People Against Steel, 26 New York 2nd, the fact that the judge found on the basis of evidence given by the prosecutor that there was sufficient to establish a claim of right doesn't go to what the judge's predisposition in the case. And in any event, we're not suggesting that the judge was prejudiced one way or was commenting to the jury about his view of defendant's assertion of the right. I'm just talking about how it could be taken in the context of the entire trial. I don't ascribe any mal-motives to the judge in this case. He tried a difficult case and tried to do the best he could under difficult circumstances. That's acknowledged. It was a mistake, but it was not a purposeful mistake. Thank you, Your Honor. Do you have a sense of where this sentence emerged from? I'm sorry, Your Honor. Where the sentence came from? I have absolutely no idea. And the fact of the matter is that if it had its genesis anywhere in this record, I'm sure that the judge would have said to the defense lawyer when the objection, we've been discussing this all along. You said it was okay. I don't recall seeing anything like that in the record, Your Honors. Thank you both. Nicely argued, nicely briefed. Thank you. That is the last case to be argued this morning, so I'll ask the deputy to adjourn court.